In the Matter of CASTLETON ESTATES, INC., Appellant, against CHARLES ABRAMS, as State Rent Administrator, Respondent.

First Department, April 24, 1956.

*Samuel Rosenblum* of counsel (*Alvin Jay Feldman,* attorney), for appellant.

*Norman S. Fenton* of counsel (*Nathan Heller,* attorney), for respondent.

FRANK, J. This is an appeal from an order made at Special Term denying a motion to review and annul an order of the State Rent Administrator who denied an application to decontrol ten housing accommodations in a development known as Castleton Park.

The ten accommodations involved can be divided into two groups. One consists of seven units located in what the petitioner calls separate two-family dwellings, but which are actually in buildings containing at least four housing accommodations. As to these, it is obvious that they are not located in two-family houses. The Administrator so found and the determination of Special Term in that respect is amply justified by the record before the commission.

The second group consists of three apartments located in completely detached two-family dwellings. With respect to these a somewhat different situation is manifest.

In 1953 the housing and rent laws were amended (L. 1953, ch. 321) to exclude from control under the act (State Residential Rent Law, § 2, subd. 2, par. [i]; L. 1946, ch. 274, as amd.), " housing accommodations in one or two family houses which are or become vacant on or after April first, nineteen hundred fifty-three ". A regulation (State and Eviction Regulations § 9, subd. 12) was promulgated by the commission in conformity with this provision of law excluding from control, " Housing accommodations in one- or two-family houses which are or become vacant on or after April 1, 1953 ". It becomes necessary, therefore, to determine whether the Legislature intended to decontrol one- and two-family houses in single ownership or whether the decontrol in such premises has no relationship to the ownership or the size and extent of a development consisting of such structures. There is some indication of the legislative intent in the Report of the New York State Temporary Commission to Study Rents and Rental Conditions (Legislative Annual, 1953, p. 439; N. Y. Legis. Doc., 1953, No. 43, p. 17), to the Legislature which is captioned, " Special adjustment for small property owners ". Concomitantly thereto, it appears that the relief was recommended because owners of small properties require rent adjustment in excess of the other rent increases granted by the Legislature to compensate for larger operating expenses for such owners in comparison to professional operators. Reference was made in these legislative discussions to hardships resulting to " small non-professional landlords ". It is evident that the Legislature, in the enactment of the measures hereinbefore discussed, was primarily concerned with giving relief to non-professional owners of one- and two-family houses by way of increased rentals and by decontrol in the event of vacancies. It is of some value, therefore, to examine the petitioner's ownership of the property involved to determine into which category the petitioner falls.

The record before the commission amply domonstrates that the development has always been operated as a single project. There is no proof that any one building in this development at any time during its existence has ever been operated or maintained as a single, individual, separate unit apart from the others. Whether the apartments are located in a multiple dwelling,. or in buildings containing four apartments or only two, the operation has always been an integrated one. It cannot be classified as an operation " by a nonprofessional landlord ".

The petitioner's development covers approximately six acres of land and contains twenty-six structures. These consist of a seven-story apartment house and a four-story one, both with manually operated elevators. These two buildings contain a total of thirty-seven apartments. There are twenty-two cottages containing sixty-four apartments varying in size from three and one-half to seven rooms. There is a two-story garage, a carpenter maintenance shop, and two summer houses.

These structures are serviced by more than one third of a mile of private road and in addition, the petitioner maintains sidewalks within the development. Indoor and outdoor public spaces for play and relaxation, lawn areas, two tennis courts and a 2,000 square foot indoor space known as the " grill " are likewise provided for the accommodation of the tenants. Heat and hot water are supplied to all buildings from one central heating plant.

The foregoing description is contained in an application seeking an overall rent increase by the single owner and operator filed in September, 1949. A map annexed to the application indicates the various structures, the private road, and the other facilities used in common by all the tenants. The application recites that the total rental income for the year 1948–1949 was in excess of $78,000. The cost of maintenance of the premises was not segregated for each building, but was bulked together to include wages of employees, the cost of heat, water, electricity and gas, janitorial materials and supplies, insurance, and other items.

With respect to the three apartments located in separate two-family structures, the contention of the appellant that these could be sold and then individually owned and operated does not seem to be borne out by the documentary proof before the commission. In view of the private roads and the common facilities extended to residents and tenants for social and athletic relaxation, it is difficult to understand how these structures could be individually owned and operated, even if an arrangement could be made for heat and hot water from a central source. Special Term has

heretofore held that the operation of a multiple number of one- and two-family houses under single ownership constitutes " a horizontal apartment house " and has denied applications for decontrol (*Matter of Jackson & Feldstein* [*McGoldrick*], N. Y. L. J., Oct. 25, 1954, p. 14, col. 1; *Karol* v. *McGoldrick*, N. Y. L. J., Dec. 1, 1952, p. 1333, col. 4). In the cited cases, heat and hot water were supplied from a common source.

While we cannot adopt these criteria as establishing an invariable rule upon which to grant or deny decontrol, these factors together with the other circumstances present in this case impel the conclusion that the refusal of the Administrator to decontrol the subject premises was not violative of the statute and was not arbitrary, unreasonable or capricious.

The order of Special Term should be affirmed.

Breitel J. P., Cox, Valente and Bastow, JJ., concur.

Order unanimously affirmed, with $20 costs and disbursements to the respondent.